# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AUDRA M. RUCKER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security<br><br>Defendant. | No. 17 C 5420<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Audra M. Rucker filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. §§405(g), 423 *et. seq*, 1381 *et. seq*. The parties consented to jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c) and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

I. PROCEDURAL HISTORY

Plaintiff applied for DIB benefits on July 8, 2013 and SSI benefits on September 24, 2014, alleging disability beginning on July 6, 2012 due to hypertension, diabe-

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

tes, Barretts esophagus, asthma and tachycardia. (R. at 10, 79). These claims were denied initially on September 27, 2013, and upon reconsideration on May 27, 2014, (*Id.* at 86, 96), after which Plaintiff filed a timely request for a hearing. (*Id.* at 119). On January 22, 2016, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 17–35). The ALJ also heard testimony from Sara Gibson, a vocational expert ("VE"). (*Id.*). Following the hearing, additional records were entered into the administrative record. (*Id.* at 10).

On April 5, 2016, the ALJ denied Plaintiff's request for DIB and SSI. (R. at 10–20). Applying the five-step sequential evaluation process, 20 C.F.R. §§ 4041520, 41.920, at step one the ALJ determined that Plaintiff has not engaged in substantial gainful activity for "more than a twelve-month period."[2] (*Id.* at 12). At step two, the ALJ found that Plaintiff has the following severe impairment: hypertension; diabetes mellitus; asthma; degenerative joint disease- carpal tunnel syndrome right hand; and obesity. (*Id.* at 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.*). The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the RFC to perform light work except:

> The claimant is limited to frequent, but not constant, operation of foot controls. She must avoid concentrated exposure to pulmonary irritants

---

[2] The ALJ noted that although Plaintiff testified that she worked full time from June 2013 through March 2014 in a commission-based job, she did not earn at substantial gainful activity levels for "more than a twelve-month period;" and, therefore, "this decision will proceed to the next step of the sequential evaluation process." (R. at 12).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

such as fumes, odors, dusts, and gases. The claimant must avoid all use or exposure to moving machinery and unprotected heights. She is capable of occasional right hand handling (gross manipulation) and occasional right hand fingering (fine manipulation) of items no smaller than the size of a paperclip.

(*Id.* at 13–18). At step five, the ALJ determined although Plaintiff is unable to perform any past relevant work, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers that Plaintiff can perform including working as a hostess, an usher, and a counter clerk. (*Id.* at 18–19). Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from July 6, 2012, the alleged onset date, through April 5, 2016, the date of the ALJ's decision. (*Id.* at 20).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by §405(g) of the Act. In reviewing this decision, the Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. 42 U.S.C §405(g); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be

more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). While "this deferential standard of review is weighted in favor of upholding the ALJ's decision, it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3 d 936, 940 (7th Cir. 2002).

### III.  DISCUSSION

Plaintiff raises various arguments challenging the ALJ's decision. After reviewing the record and the briefs, the Court is convinced by Plaintiff's argument that the ALJ erred when evaluating Plaintiff's subjective statements about her symptoms.

The Regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. *See* SSR 16-3P, at *2; *see also,* 20 C.F.R. § 404.1429. First, the ALJ must consider whether there is an underlying "medically

determinable impairment(s) that could reasonably be expected to produce [the individual's] symptoms, such as pain." *Id*. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, the ALJ is required to "evaluate the intensity, persistence, and limiting effects of [the claimant's] symptoms" to determine the extent to which they limit the claimant's functioning. *Id*. In making the evaluation, an ALJ must consider regulatory factors including: the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication(s), treatment(s), and limitations. *Id*.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). It is insufficient for an ALJ to simply recite the factors that are described in the regulation without giving specific reasoning. *Steele*, 290 F.3d at 942. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighted." *Id*.

The Court finds that the reasons provided by the ALJ for rejecting Plaintiff's symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). The ALJ did not fully credit Plaintiff's allegations because the symptoms were not entirely consistent with Plaintiff's daily activities, work history, and treatment history. (R. at 14 –18). There are several errors in the ALJ's analysis.

First, the ALJ failed to explain how Plaintiff's ability to complete limited daily activities undermines her allegations of pain. While it is permissible for an ALJ to consider daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place undue weight on these activities. *See Moss*, 555 F.3d at 562; *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place."). Further, when an ALJ does analyze a claimant's daily activities, the analysis must "be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, when discussing Plaintiff's daily activities, the ALJ merely lists Plaintiff's daily activities as substantial evidence that she does not suffer disabling pain, stating, "[t]hese activities do not support the level of limitation alleged." (R. at 15). The ALJ does not, however, explain *how* Plaintiff's testimony on her limited daily activities undermines her claim of disabling pain; nor does the ALJ cite to specific examples of contradictions. *See Jelinek*, 662 F. 3d at 812 ("An ALJ must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Likewise, these limited activities do not demonstrate that Plaintiff can perform full-time work. *See Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help

from other person . . . and is not held to a minimum standard of performance, as she would be by another employer.") (collecting cases).

Significantly, the ALJ ignored Plaintiff's numerous limitations when performing daily activities and did not consider that many activities require assistance from another person. For example, Plaintiff testified that she is dependent on the assistance of her neighbors and roommate to go outside as she cannot easily go up and down the stairs due to leg pain. (R. at 50). While shopping, Plaintiff must take frequent breaks because of wheezing and numbness, and she is unable to sit through an entire church service due to pain in her lower back. (*Id.* at 50–51). Plaintiff further testified that she cannot vacuum or sweep around the house due to her coughing and wheezing; that she can only wash a few dishes at a time due to arm and hand pain; that she requires assistance when showering to ensure that she does not fall; and that she needs help washing her hair. (*Id.* at 54, 64). "An ALJ cannot disregard a claimant's limitation in performing household activities." *Moss*, 555 F.3d at 562. The ALJ did not discuss these qualifications in his analysis. While an ALJ need not discuss every piece of evidence in the record, he "must confront the evidence that does not support [his] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004).

Second, the ALJ failed to build a logical bridge between Plaintiff's work history and his conclusion that Plaintiff's pain allegations were not as severe as alleged. The Seventh Circuit has previously recognized that a claimant's work history is not always indicative of an ability to work full time. *See Stark v. Colvin*, 813 F.3d 684,

689 (7th Cir. 2016) (finding the "ALJ should have acknowledged Stark's efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it."); *see also, Jones v. Shala*, 21 F.3d 191, 192 (7th Cir. 1994) (explaining that claimant might be earning a decent wage despite being permanently disabled).

Here, the ALJ simply stated that Plaintiff's history of working 30 to 40 hours a week for eight months in a commission-based job was inconsistent with the limitation levels Plaintiff alleged. The ALJ did not, however, inquire into Plaintiff's absentee rates, need for breaks, or challenges Plaintiff faced while working. Nor did the ALJ account for Plaintiff's earnings only $300–$400 a month in this position, below substantial gainful activities level. *See* (R. at 46). Similarly, the ALJ did not follow up when the Plaintiff stated that she did not sit for long periods of time even though this was a "mostly-sit down job." (*Id.*). *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (finding the ALJ failed to build a logical bridge between plaintiff's activities and his conclusion that she did not meet a listing when he failed to ask the critical questions about plaintiff's actual work hours or absentee rates in the jobs she held). Thus, the Court remains uncertain as to how Plaintiff's limited work history is inconsistent with the limitation levels Plaintiff alleged. *See Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) ("[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation.").

Additionally, the ALJ does not explain how Plaintiff's search for employment after she was laid off in March 2014 undermines her allegations. The Seventh Circuit has previously recognized that a "claimant's *desire* to work is not inconsistent with her *inability* to work because of a disability." *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (stating claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment") (citing *Voigt v. Colvin,* 781 F.3d 871, 876 (7th Cir. 2015)). Without further explanation, the Court is unclear how Plaintiff's persistent job search is inconsistent with her pain allegations. *See Ghiselli*, 837 F.3d at 777 *(*"Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.").

Finally, the ALJ improperly dismissed Plaintiff's symptom allegations because "[h]er symptoms improved and she was 'comfortable, joking with partner.'" (R. at 15). While the Regulations provide that an ALJ may consider Plaintiff's medical treatment history as a factor in evaluating Plaintiff's subjective pain allegations, *see* 20 C.F.R. § 404.1529, he must explain how symptom improvement undermined her allegations of continued symptoms or how it related to her ability to work. *See Sanders v. Berryhill*, No. 17 C 2672, 2018 WL 3533312, at *4 (N.D. Ill. July 23, 2018) (finding ALJ failed to create a logical bridge between the evidence and his conclusion that Plaintiff was not disabled when he failed to explain how Plaintiff's improvement with medication related to her ability to work). The ALJ did not do so

here. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighted." *Steele*, 290 F.3d at 942.

Defendant notes that when evaluating Plaintiff's subjective allegations, the ALJ's determination "need not be 'flawless.'" (Def.'s Mem., Dkt. 17 at 10) (citing *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009)). Although "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are,'" *Halsell*, 357 F. App'x at 722–23 (emphasis in original), here, the ALJ did not provide "enough" valid reasons for discounting Plaintiff's symptom statements. *See Ghiselli*, 837 F.3d at 778 ("The ALJ's unsupported judgments regarding Ghiselli's ability to perform the activities of daily living and her statement that she was looking for a new job are not the sort of credibility determinations entitled to deference."); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) ("Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible."). The errors set forth above are significant enough that the Court cannot confidently say that the ALJ would have made the same evaluation of Plaintiff's symptom statements had he not made these errors. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative.").

For these reasons, the ALJ failed to "build an accurate and logical bridge from the evidence" to his conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted); *see also McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) ("[T]he ALJ must explain her [credibility] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."). The Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom allegations, which is an error requiring remand.[4] Although the Court does not hold that the ALJ should have found Plaintiff's subjective allegations fully supported, the foundation underlying his negative assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

On remand, the ALJ shall reevaluate Plaintiff's allegations with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed.

---

[4] Because the Court remands on this basis, it need not address Plaintiff's other arguments at this time.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [13] is GRANTED, and the Commissioner's motion for summary judgment [16] is DENIED. Pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceeding consistent with this opinion.

Dated: August 29, 2018

E N T E R:

MARY M. ROWLAND
United States Magistrate Judge